ONE 1948 PONTIAC AUTOMOBILE, Etc. *v.* STATE.

May 24, 1954

No. 39201          66 Adv. S. 34          72 So. 2d 692

*Homer Pittman,* Hattiesburg, for appellant.

354

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

KYLE, J.

This case is before us on appeal by Wallace Edison from a judgment of the Circuit Court of Forrest County affirming a judgment of the county court ordering that a 1948 Pontiac automobile belonging to the appellant and used for the unlawful transportation of intoxicating liquor be condemned and sold and the proceeds thereof placed in the county treasury.

The record shows that the automobile was seized by constables W. E. Clark and Print Jones on the night of January 25, 1952, after the automobile, which was being driven by Wallace Edison, had been brought to a stop on U. S. Highway No. 49, a short distance south of the City of Hattiesburg and the driver arrested. On the following day a complaint under oath was filed by the two constables in the county court asking for the condemnation and sale of the automobile which was valued at $900, as provided in Section 2618, Code of 1942. In their petition the two constables stated that the car was being driven by Wallace Edison "in a reckless and speeding manner", and that after the driver had been arrested ten 1-gallon jugs of intoxicating liquor were found in the car.

The defendant, Wallace Edison, answered the petition, and in his answer denied that at the time of his arrest he was driving the car in a wreckless and speeding manner, or that the automobile was being used for the unlawful transportation of intoxicating liquor. The defendant later filed an amended answer in which he averred that his arrest by the above mentioned officers was unlawful, and that the search and seizure of his car was unlawful, for the reason that he was not driving the car in a reckless and speeding manner at the time of his arrest and the officers had no probable cause for stopping him on the highway and searching the car.

The case was tried at the August 1952 term of the court without a jury. The court found that the automobile was being used for the unlawful transportation of intoxicating liquor; and the court ordered that the car be condemned and sold. The court found that the Universal C. I. T. Credit Corporation were the holders of a valid lien on the car for the sum of $48.72, and the court ordered that the claim be paid out of the proceeds of the sale, and that the balance of the money be paid into the county treasury. Through inadvertence or oversight no judgment was entered upon the minutes of the

court at the August term; and it was not until the October term of the court that a nunc pro tunc judgment was entered upon the minutes. An appeal was taken to the circuit court. And on April 30, 1953, the circuit court entered a judgment affirming the order of the county court. From that judgment the defendant has prosecuted this appeal.

The first point argued by the appellant's attorney as ground for reversal on this appeal is that the petition for the condemnation and sale of the automobile was insufficient on its face to support the judgment of condemnation, in that the State was not made a party to the petition. But there is no merit in this contention. The statute provides that the complaint in a case of this kind may be made by the sheriff or other lawful officer, who has seized the vehicle; and the complaint in this case was made by Clark and Jones, as constables, and was duly sworn to by them and the county prosecuting attorney. We therefore hold that the requirements of the statute were fully met in the filing of the complaint.

The next point argued by the appellant's attorney is that the evidence upon which the judgment is based was insufficient to show a lawful arrest, and that the evidence relating to the possession of the intoxicating liquor was illegally obtained by a search of the appellant's automobile without a warrant and without probable cause and was improperly admitted to establish the State's case.

The evidence offered on behalf of the State was substantially as follows: W. E. Clark, Constable of Beat 3, testified that he was on patrol duty with Constable Print Jones during the early part of the night, and that he drove into U. S. Highway No. 49 at Paul Johnson's Service Station about 9:00 o'clock p. m. It was raining and the traffic was heavy. As the officers headed northwardly along the highway the appellant passed them in the Pontiac automobile. "He was whipping in and

out of the traffic and he cut in front of me and almost caused me to wreck." The officers decided to pass the appellant and see if he would cut in front of them again. The appellant then passed the officers again at a rate of speed of about 55 or 60 miles an hour. Clark then sounded his siren and forced the appellant over to the side of the road. The officers then got out of their car, walked over to the appellant's Pontiac, and arrested the appellant for reckless driving and speeding. The officers searched the car and found 10 gallons of moonshine whiskey in the car. The appellant was carried before a justice of the peace, and was charged with speeding, reckless driving, and possession of whiskey. He entered a plea of guilty to each of the charges and paid a fine in each case. Clark stated that he based his charge of reckless driving on the appellant's action in "cutting in too quick." Clark admitted that the highway was a 4-lane highway and that the speed limit on the highway was 60 miles an hour. He also admitted that he had no information that the appellant had any liquor in the car at the time of the arrest.

Print Jones' testimony was substantially the same as that of W. E. Clark. On direct examination Jones said:

"A. * * *. It was raining, and we started on up the highway and he pulled out of line and pulled right back in ahead of us and almost hit the car. We drove up the highway a little farther and we pulled out and went around him and he did the same thing again and that is when we taken after him and stopped him up there and pulled him over to the side of the road."

On cross-examination Jones testified as follows:

"Q. And the only thing that attracted your attention was the fact that he had passed you, and I believe you say he cut a little too close coming back into the right lane?

"A. That's right.

"Q. Other than that he hadn't violated any law there in your presence had he?

"A. No.

"Q. You had no search warrant for his automobile. Is that right?

"A. No, sir, we didn't have no search warrant.

"Q. You had no information that he had any whiskey in his car?

"A. We did not.

"Q. So, when you took out after him there you wanted to find out why he had passed you at that rate of speed?

"A. Yes, sir.

"Q. And he was driving—you were driving between fifty and fifty-five miles an hour?

"A. I'd say we was, yes, sir.

"Q. And naturally he was driving at a slower rate of speed because you passed him didn't you?

"A. Yeh, we passed him.

"Q. So then, after he passed you the second time then you continued after him and finally run him down about the cloverleaf?

"A. That's right.

"Q. And you pulled him off to the side of the road?

"A. That's right.

"Q. And what was the first thing that was said to him after you stopped him there?

"A. I don't remember. I come up on one side of the car and Bill Clark come up on the driver's side and I believe Bill asked him what the trouble was or what was the matter—what he meant. I believe that was about the first that was said to him.

"Q. And he asked him what the trouble was and what he meant?

"A. That's right.

"Q. All right, what else did you say?

"A. Well, he told him to get out of the car and he looked at his driver's license.

"Q.  He told him to get out of the car and he asked him for his driver's license, and did he have his driver's license?

"A.  Yes, he did.

"Q.  All right, what next?

"A.  I was looking in the car—flashing the light back there.

"Q.  You were looking in the car while Bill was asking him for his driver's license.  Is that right?

"A.  Yes.

"Q.  And what part of the automobile were you searching there at that time?"  *  *  *

"A.  I just looked over in the back seat.

"Q.  Looked over in the back seat?

"A.  That's right.

"Q.  All right, go ahead.

"A.  And there was ten gallons of liquor in there.

"Q.  And you found the liquor there at that time?

"A.  That's right."

In the case of Brooks v. Wynn, Sheriff, 209 Miss. 156, 46 So. 2d 97, the Court held that the statute providing for the confiscation of vehicles used in the unlawful transportation of intoxicating liquor is highly penal and must be strictly construed against the State.

In the case of Gause v. State, 203 Miss. 377, 34 So. 2d 729, the Court held that evidence that the highway patrolman found whiskey in the defendant's automobile, which he had pursued and stopped in order to check the driver's license of the defendant, was illegally obtained and hence inadmissible against the defendant in a liquor prosecution, where the patrolman searched the automobile without a warrant or reason to believe that liquor was being transported therein and the defendant had committed no misdemeanor in the patrolman's presence.

Section 8175, Code of 1942, provides that, "Any person who drives any vehicle in such a manner as to indicate either a willful or a wanton disregard for the safety of persons or property is guilty of reckless driving."

In the Gause case the defendant was convicted on a charge of unlawful possession of intoxicating liquor. The highway patrolman found the whiskey in the defendant's automobile after he had chased the defendant off the highway and down a plantation road. The officer testified that he did not know who was in the automobile when he began the chase. He had no reason to believe that the defendant was transporting intoxicating liquor in the car. The reason given by the officer for pursuing the defendant's automobile out into the field was that he was guilty of reckless driving in the presence of the officer. The Court in commenting upon the officer's testimony said that the testimony showed that the alleged reckless driving took place during the chase, and for the most part off the traveled portion of the highway; and after quoting the provisions of the above mentioned statute, the Court said: ''We are of the opinion that the enactment of this statute was for the protection of other motorists, pedestrians, and property on the highway, and that since the patrolman was behind the defendant, there was no willful or wanton disregard for the safety of persons or property on the part of the defendant under the facts and circumstances of this case within the meaning of the statute above quoted from. * * * Most assuredly, a highway patrolman is not vested with authority to begin chasing a motorist on the highway unless at the time he has good reason to believe, and does believe, that such motorist had violated the law or is violating the law at the time he begins such a chase.''

■■ The facts in this case are very similar to the facts in the Gause case. The officers here did not claim that the appellant at any time drove his car at a greater rate of speed than 55 or 60 miles per hour; and in our opinion the testimony of the officers does not show that the appellant was driving his automobile in such manner as to indicate either a willful or wanton disregard for the safety of persons or property, so as to constitute

reckless driving. The officers admitted that they had no search warrant authorizing the search of the automobile for intoxicating liquor. They admitted that they had no information that the appellant had intoxicating liquor in the car. We think that the officers' search of the automobile without a search warrant was illegal and that the evidence obtained by the search was inadmissible in the trial of the condemnation issue; and since there was no other evidence to support the charges alleged in the complaint, the petition for the condemnation and sale of the automobile should have been dismissed.

The appellant's attorney also argues that the judgment of the county court is void for the reason that the judgment was not entered at the term of the court during which the case was tried. But in view of the fact that the judgment must be reversed on other grounds, as stated above, it is not necessary that we consider the question raised as to the invalidity of the judgment on that account.

For the reasons stated above the judgment of the county court is reversed and judgment will be entered here dismissing the petition for the condemnation and sale of the automobile.

Reversed and judgment rendered for the appellant.

*Roberds, P. J.,* and *Hall, Arrington* and *Ethridge, JJ.,* concur.