196 So.2d 79 (1967)
Thomas WATTS
v.
STATE of Mississippi.
No. 44236.
Supreme Court of Mississippi.
March 6, 1967.
*80 R. Jess Brown, Denison Ray, Jackson, for appellant.
Joe T. Patterson, Atty. Gen., by R. Hugo Newcomb, Sr., Asst. Atty. Gen., Jackson, for appellee.
BRADY, Justice:
Appellant was tried and convicted on April 21, 1966, in Justice of the Peace Court, District One, of Claiborne County, Mississippi on charges of reckless driving and carrying a concealed weapon. On appeal to the Circuit Court of Claiborne County appellant filed a motion to quash the venire on the ground that Negroes had been systematically and arbitrarily excluded from jury service in said county in violation of appellant's rights under the Fourteenth Amendment. A hearing was held on May 17, 1966, and the motion to quash was overruled.
On May 20, 1966, appellant was tried de novo in the circuit court and was again convicted on both charges by a jury duly impaneled from the venire which had been the subject of the motion to quash. Motion for a new trial was overruled, and appellant was fined $50 on the charge of reckless driving, and on the charge of carrying a concealed weapon was fined $350 and sentenced to serve four months in the county jail. Appellant thereupon filed a motion to reduce the sentences, which motion was overruled, and appeal was then taken to this Court.
The facts out of which this cause arose are few and simple. Between the hours of 1:00 and 1:15 on the morning of March 6, 1966, Patrolmen A.B. Marlin and Ira Pace of the Mississippi Highway Safety Patrol, while cruising on U.S. Highway 61 several miles south of Port Gibson, Mississippi, observed a green and white Chevrolet driven by appellant proceeding ahead of them and traveling between forty-five and fifty miles per hour. Both cars were traveling south. As the officers approached appellant's car, they noticed that it was weaving from one side of its lane of traffic to the other, running off the pavement on the right side of the road at least three times and back across the highway and the center line thereof at least three times. The highway at this point contains numerous hills and curves, and several automobiles were coming from the opposite direction on the same highway. For these reasons, the officers were unable to stop appellant as soon as they would have liked since to do so might have endangered the lives of other travelers on the highway. However, as soon as it was safe to do so, they pulled alongside appellant's automobile and directed him to stop, which he did. Patrolman Marlin testified that while observing appellant in his efforts to find his driver's license, he concluded that appellant was drinking. Appellant was placed under arrest for reckless driving and was told to get out of the car, at which time he was personally searched. Appellant was then placed in the custody of Patrolman Pace. Patrolman Marlin returned to appellant's automobile, opened the left-hand door which appellant had previously opened, and shined his light into the car. At that time he detected a pistol lying under the left front seat. The record discloses that two-thirds of the pistol was showing from under the seat and was readily *81 visible to the officer from where he stood. The pistol was seized, and appellant was charged with reckless driving and carrying a concealed weapon.
The basic issue presented by this appeal is whether appellant's motion to quash the venire should have been sustained. The determination of this question makes moot the other assignments of error urged by appellant.
By stipulation it was admitted that according to the records of the Bureau of Census of the United States for 1960 the racial composition of Claiborne County is overwhelmingly Negro. In 1960 there were 2,600 white people, constituting 24% of the population, and 8,245 non-whites, constituting 76% of the population of said county. The white male population twenty-one years of age or over in 1960 numbered 823 or 31.1% of the total population over twenty-one years of age, while the non-white males twenty-one years of age or over numbered 1,822 or 68.9%.
The record discloses that despite the great majority of Negroes both in the general population and among the males eligible for jury service, the Board of Supervisors of Claiborne County had for ten years placed an overwhelming preponderance of whites on the jury lists from which the venires were drawn. In fact, of the approximately 3,467 to 3,867 persons placed on the jury lists of Claiborne County between 1956 and 1963, only twenty-two were Negroes. The State stipulated that for the years 1956 through 1963 approximately 350 to 400 prospective jurors were annually placed on the jury lists. A yearly analysis of these jury lists from 1956 through 1965 is as follows:

 Total on
 Supervisors' Negroes
 Year[*] Lists on Lists
 1956 350-400[**] 5
 1957 350-400 1
 1958 350-400 3
 1959 350-400 List Unavailable
 1960 350-400 0
 1961 350-400 3
 1962 350-400 1
 1963 350-400 2
 1964 320 3
 1965 347 4[]
For the year 1966 the names of 410 prospective jurors appeared on the supervisors' list, of whom fifty-three or fifty-four were Negroes. From a total of approximately 1,653 to 2,553 persons called for jury duty from 1956 through the January 1966 term, *82 only two were Negroes. An analysis of the number of Negroes actually called for jury duty during this period, as compared to the total number of jurors called, reflects the following:

 Total
 Year Jurors Called Negroes Called
 1956 150-250[*] 0
 1957 150-250 0
 1958 150-250 0
 1959 150-250 0
 1960 150-250 0
 1961 150-250 0
 1962 150-250 0
 1963 150-250 0
 1964 150-250 0
 1965 241 0
 1966 (January Term) 62 2

For the May 1966 term, at which appellant was convicted, only seven Negroes were on the venire of sixty-two persons. The State admits that from 1956 to 1964 no Negroes served on any grand or petit jury in Claiborne County. It is obvious that no Negroes served in 1965, because, as heretofore shown, none were called for jury duty. The record is silent and no testimony was offered as to whether the two Negroes called in the January 1966 term actually served as jurors. In the May 1966 term two Negroes sat on the grand jury.
The circuit clerk, who was also the county registrar, estimated that in April 1965 there were only fifteen qualified Negro male electors in the county. In April 1966, at the time the supervisors prepared the jury list in question, she estimated that there were approximately 1500 Negroes registered to vote in the county, of whom only 300 were Negro males. She testified that of these 300, possibly no more than ten were qualified electors by virtue of having paid their poll taxes for two consecutive years, although it is conceded that this number could have been as high as 150. The proof shows that on May 17, 1966, there were approximately 4,375 registered voters in Claiborne County, of whom 2,600 were Negroes. This drastic increase over the number of Negroes registered a month earlier occurred simultaneously with the presence of a federal voting registrar in the county.
This Court has heretofore clearly stated that the laws relating to the selection of juries must be followed in accordance with the decisions of the United States Supreme Court and that when such laws are not followed, due process under the Fourteenth Amendment is denied to defendants. In Bolton v. City of Greenville, 253 Miss. 656, 666, 178 So.2d 667, 672 (1965), we stated:
We acknowledge that all courts are fallible and their decisions are subject to acrid criticism. Nevertheless, this Court is under authority of the United States Supreme Court. Our attitude toward a decision of that Court does not authorize or control its rejection or acceptance. We must follow the decision until it has been abrogated by constitutional and legal procedures. Irrespective of how erroneous *83 it may appear, or how odious it is, a decision of the United States Supreme Court is still the ultimate in judicial determination and is binding on the tribunals and citizens of the respective states in comparable cases.
The facts in this case conclusively show beyond peradventure that Negroes have been systematically excluded from juries in Claiborne County over a period of ten years. Nearly a quarter century ago the United States Supreme Court held that in order to refute the prima facie case of discrimination created by the long continued absence of Negroes from jury service, the jury selection officials must present evidence of a substantial nature which is corroborated by public records. Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947). It is obvious from a reading of the record in this case that the jury selection officials of Claiborne County did not present evidence of a substantial nature to rebut the prima facie case of discrimination created by the facts previously recited. This Court has repeatedly held that the discriminatory exclusion of Negroes from the venire is in violation of a defendant's rights under the Fourteenth Amendment. Shinall v. State, 187 So.2d 840 (Miss. 1966); Black v. State, 187 So.2d 815 (Miss. 1966); Bass v. State, 254 Miss. 723, 182 So.2d 591, 183 So.2d 483 (1966); Harper v. State, 251 Miss. 699, 171 So.2d 129 (1965).
In Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940), the United States Supreme Court held that in determining whether there was discrimination in the selection of jurors, the courts will look to the actual facts of the case rather than to the testimony of the particular officials involved. That Court further held in Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935), that where the facts clearly show a long continued exclusion of qualified Negroes from jury service, the jury selection officials will not be allowed to explain away such exclusion by general assertions that they did not intend to discriminate. Any other rule would render meaningless the constitutional guarantees embodied in the Fourteenth Amendment.
We have heretofore stated that there is currently no escape from the inexorable rule which has been laid down by the United State Supreme Court in regard to the selection of juries. Wise public officials will take note and be governed accordingly.
For the foregoing reasons, we must hold that the trial court erred in overruling appellant's motion to quash the venire. Accordingly, we reverse and remand for a new trial.
Although this case must be reversed and remanded for the foregoing reasons, it is apparent that on retrial there will again be presented the question of the validity of the search of appellant's automobile. Furthermore, since the question of illegal searches and seizures is being repeatedly presented to this Court, we deem it wise to briefly outline some of the basic Mississippi rules with reference to searches and seizures as they apply to the facts of this case.
Appellant strenuously urges that the search in the present case was unlawful because the arrest itself was unlawful. In support of this proposition appellant cites One 1948 Pontiac Automobile v. State, 221 Miss. 352, 72 So.2d 692 (1954), Gause v. State, 203 Miss. 377, 34 So.2d 729 (1948), and Sanford v. State, 195 Miss. 896, 16 So.2d 628 (1944). However, under the authority of Barnes v. State, 249 Miss. 482, 162 So.2d 865 (1964), there can be no doubt that the arrest of appellant for reckless driving was lawful. In that case we said:

The wobbling, swaying and weaving back and forth by defendant while driving the truck constituted such reckless driving as to justify the constable in stopping Barnes. The driving of a vehicle in such a manner as to indicate "either a wilful or a wanton disregard for the safety of *84 persons or property" is reckless driving. Miss. Code 1942, Rec., § 8175. This provision, based on the Uniform Vehicle Code, seeks "to prohibit conduct jeopardizing even the driver's own safety and property, not merely that `of others.' No qualifying language restricts a protection to the person or property of another." Reckless driving means the commission of conscious acts or omissions which the driver knows or should know create an unreasonable risk of injury or damage. That which is necessary is that the driver should realize the strong probability of harm likely to ensue. Fisher, Vehicle Traffic Law (1961) 324. Somewhat similar to the present case is Shaw v. State, [248] Miss. [823], 161 So.2d 629. Gause v. State, 203 Miss. 377, 34 So.2d 729 (1948), and One 1948 Pontiac Automobile v. State, 221 Miss. 352, 72 So.2d 692 (1954), involved considerably less significant facts than those present here, and are distinguishable. The jury was warranted in finding that defendant's conduct in driving the truck was sufficient to justify stopping it and arresting Barnes for reckless driving. (249 Miss. at 484-85, 162 So.2d at 866.) (Emphasis added.)
The factual similarities between the Barnes case and the present case are striking. While Barnes did not overrule Gause v. State or One 1948 Pontiac Automobile v. State, supra, it did explicitly state that they were distinguishable and "involved considerably less significant facts."
As was noted in the Barnes case, the Mississippi reckless driving statute, Mississippi Code Annotated section 8175 (1956), is substantially the same as Uniform Vehicle Code section 11-901 (1946). The following quotation from a leading authority on motor vehicle law supports our conclusion in the Barnes case:
Reckless Driving Under Statutes Adopted From Uniform Vehicle Code
Nineteen states now have statutes defining reckless driving, substantially the same as sec. 11-901 of the Uniform Vehicle Code, in terms of wilful or wanton disregard of the safety of persons or property. (Arizona, Arkansas, California, Colorado, Delaware, Florida, Illinois, Iowa, Kansas, Minnesota, Mississippi, Montana, Nebraska, South Carolina, Tennessee, Utah, Washington, West Virginia and Wyoming.) Unlike the older-type statutes * * * these 19 states seek to prohibit conduct jeopardizing the driver's own safety and property, not merely that of others. There is no qualifying language susceptible of construction to the effect that the person or property of some other person must be endangered. (Donigan & Fisher, Know The Law at 21 (1958). (Emphasis added.)
It is apparent that even under the old rule set forth in the Gause and One 1948 Pontiac Automobile cases, supra, the officers had the right to arrest appellant for reckless driving. This is reflected by the testimony of the arresting officers that they were unable to make the arrest as soon as they would have liked because of the presence of oncoming cars on the highway.
We still are faced with a second question: Pro arguendo, assuming that the arrest for reckless driving in the present case was lawful, did the arresting officers have the right to search appellant's automobile as an incident to his arrest? If the subsequent search was lawful, it follows that all evidence obtained therein concerning appellant's carrying a concealed weapon was admissible.
The general rule concerning the search of vehicles following a lawful arrest for an offense committed in the arresting officer's presence is stated in 79 C.J.S. Searches and Seizures § 68 e (1952):
No search warrant is necessary in order to search the vehicle in which a person is riding at the time of his arrest for an offense committed in the presence of the officer, including a felony or a misdemeanor; *85 and such a search is not unreasonable under the constitutional guaranty. * * * (Citing Thompson v. State, 153 Miss. 593, 121 So. 275 (1929)).
While this seems to be the general rule and the rule followed in Mississippi (Thompson, supra), it is not universally followed. Before considering the Thompson and other Mississippi cases, we should consider certain recent cases in jurisdictions which do not follow the above rule.
An excellent article has been written by Henry Rothblatt in 35 Mississippi Law Journal 252 (March 1964) entitled The Arrest: Probable Cause and Search Without a Search Warrant. In that article the author notes that a number of jurisdictions have recognized that the right to search an automobile as an incident to a lawful arrest does not extend to cases involving arrests for minor traffic violations. In this regard the author says:
Most traffic violations are of such a nature that there are no fruits of the crime and no instrumentalities of the crime other than the motor vehicle itself. Therefore, a search incidental to an arrest for a traffic violation can not, in general, be justified as a search for fruits or instrumentalities of the crime. (35 Miss.L.J. at 265-66.)
The following cases indicate a few of the jurisdictions which have reached the above result. In People v. Blodgett, 46 Cal.2d 114, 293 P.2d 57 (1956), a taxicab was double parked. Its passengers were persons who had been under police surveillance for narcotics violations. The cab was searched and marijuana found. No citation was issued for the traffic violation. The California court said:
Although the cab driver could have been arrested for double parking, the search of his cab cannot be justified on that ground, for it had no relation to the traffic violation and would not have been incidental to an arrest therefor. (293 P.2d at 58.) (Emphasis added.)
In People v. Zeigler, 358 Mich. 355, 100 N.W.2d 456 (1960), the defendant was stopped for running a stop sign. The defendant and his car were searched. Wagering memoranda were discovered. The Michigan court held that the search was illegal since a lawful traffic arrest did not by itself justify an incidental search.
Again in People v. Gonzales, 356 Mich. 247, 97 N.W.2d 16 (1959), an automobile was stopped with only one headlight burning. The occupants of the car were requested to leave the automobile so that the arresting officer "could check it." In checking the car the butt of a pistol was seen sticking out of the front seat. The defendant was then charged with carrying a concealed weapon. The Michigan court held the search invalid for the same reasons expressed in the Zeigler case, supra.
In People v. Molarius, 146 Cal. App.2d 129, 303 P.2d 350 (1956), the defendant was arrested for making a U-turn. Officers then searched the car and found narcotics. A narcotics conviction was reversed on the ground that there was no relation between the search and the traffic violation.
In summary, arrests for the following traffic violations have been held not to justify incidental searches of the person or the vehicle:
(1) Passing on a curve. Burley v. State, 59 So.2d 744 (Fla. 1952).
(2) Having only one headlight burning. People v. Gonzales, supra.
(3) Illegally parking. People v. Watkins, 19 Ill.2d 11, 166 N.E.2d 433 (1960).
(4) Failing to obey stop sign. People v. Zeigler, supra.
In Brinegar v. State, 97 Okl.Crim. 299, 262 P.2d 464 (1953), the Oklahoma court summarized the requirements for conducting a search incident to an arrest for a minor traffic violation:
Officers are not justified after a valid arrest of motorist for minor traffic violation, *86 in searching his person or his immediate presence, such as the seats and glove compartment of his car, excepting in cases where the officers have reasonable grounds for such action, the seats and glove compartment of the car may be searched for firearms, and this only as a precaution for the safety of the arresting officer and to prevent escape, when done in good faith. (262 P.2d at 466.)
The court on rehearing in the Brinegar case said:
We would make clear that not every arrest of a motorist for a traffic violation would justify a search of the seats and glove compartment for weapons. There must be facts and circumstances observed by the officers to cause them in good faith to believe that the motorist is armed, is dangerous, or apparently intends to escape. Each case necessarily must stand or fall on its particular facts and circumstances. (262 P.2d at 480-81.)
The above cases are not in accord with the universal rule. It is our conclusion that these cases merely indicate jurisdictions which have taken exception to the general rule previously expressed, i.e., that no search warrant is necessary in order to search the vehicle in which a person is riding who had committed an offense which justifies his arrest. We point out that this general right to search vehicles as an incident to a lawful arrest extends to cases involving traffic violations as well as to more serious offenses. The following quotation supports this conclusion:
As Incident To Arrest For Another Offense.
Where the driver of an automobile is arrested while in the act of committing a felony or misdemeanor, as, for instance, driving while intoxicated, or driving without lights or without license plates, or illegally transporting intoxicating liquor, the right of search follows as an incident * * *. (9-10 Huddy, Automobile Law § 168 at 270) (9th ed. 1931). (Emphasis added.)
It is apparent from an examination of the following cases that in Mississippi an automobile in which the arrested person is found can be searched as an incident to the arrest so long as the arrest itself is lawful.
In Thompson v. State, 153 Miss. 593, 121 So. 275 (1929), appellants were arrested for drunkenness on a public highway. The automobile in which they were found was searched by the arresting officers and intoxicating liquors were discovered. Appellants were indicted and convicted. On appeal it was argued that the search of the automobile was unlawful, hence the evidence obtained thereby was inadmissible. In rejecting this contention this Court said:
(T)he evidence for the state showed that, when appellants were arrested and the search was made, they were drunk on the public highway, in the presence of the sheriff and his two deputies. Under section 1295, Code of 1906 (Hemingway's 1927 Code, § 1082), drunkenness in a public place is denounced as a crime. * * * Appellants were arrested while in an automobile where the intoxicating liquor was found. The authority to arrest appellants carried with it the authority of the officers to search their persons and the automobile in which they were driving. (153 Miss. at 596-97, 121 So. at 277.) (Emphasis added.)
The Thompson case recognizes that the authority to arrest for public drunkenness in a public place carries with it the right to search the persons arrested and the automobile in which they are riding. There is no language in Thompson to indicate that this right to search as an incident to a lawful arrest will be limited to cases involving public drunkenness.
In Smith v. State, 240 Miss. 738, 128 So.2d 857 (1961), the arresting officer drove up beside appellant's automobile and motioned him to stop. At the time, appellant was not violating any law. Upon *87 seeing a strange automobile pull up beside him, appellant immediately accelerated and tried to outrun the officer. A chase ensued in which appellant was stopped and arrested for speeding. The automobile in which he was riding was searched and burglary tools were discovered. Appellant was tried and convicted for possession of burglary tools. In reversing the conviction this Court said:
In the case at bar, there was no evidence that the defendant was committing a crime, or was attempting to breach the peace, when the sheriff began his pursuit. The sheriff had no duty nor right to arrest the defendant at that time; therefore the search made of the defendant's automobile was an incident to an illegal arrest, and was an unlawful search. (240 Miss. at 745, 128 So.2d at 860.) (Emphasis added.)
This case is important because the above language indicates that if the initial arrest had been lawful, the arresting officer could have searched the automobile as an incident to that arrest. This is further indicated from the language contained in the dissenting opinion in the Smith case:
The nine items found in appellant's automobile were burglar's tools. The question is whether they were found by the officers as a result of an unreasonable and illegal search. If the arrest was legal, the search was legal. If appellant committed an offense in the presence of the sheriff, he had a legal right to pursue and arrest appellant and search his automobile. * * * (240 Miss. at 745-46, 128 So.2d at 860) (dissenting opinion.) (Emphasis added.)
In Gause v. State, 203 Miss. 377, 34 So.2d 729 (1948), the arresting officer began chasing appellant at a time when he was not violating any traffic laws and had not committed any crime. A chase ensued in which appellant was stopped and his automobile searched. The search revealed the presence of intoxicating liquors. Appellant was indicted and convicted for possession of intoxicating liquors. This Court reversed the conviction, noting that since the arrest itself was unlawful, there could be no lawful search of appellant's vehicle as an incident thereto. The following language is important since it recognizes the right of incidental search of an automobile where the arrest itself is lawful:

Since our statute, Section 2615, Code of 1942, does not authorize the searching of an automobile for intoxicating liquors without a search warrant, except when the officer has reason to believe and does believe that intoxicating liquors are being transported in said vehicle, and except where the search is made pursuant to an arrest for some other misdemeanor committed in the presence of the officer, we hold that under the facts of this case the evidence as to the possession of intoxicating liquor was illegally obtained and was, therefore, inadmissible * * *. (203 Miss. at 381-382, 34 So.2d at 731.) (Emphasis added.)
In Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (1962), appellant was arrested by a highway patrolman pursuant to an arrest warrant on a perjury charge. Appellant's automobile was searched and burglary tools were discovered. Appellant was tried and convicted for possession of burglary tools. On appeal it was argued that evidence obtained by the search of appellant's automobile was inadmissible since obtained by an unlawful search. In rejecting this argument this Court said:
We also hold that the search of appellant's car was incident to the arrest, and that the evidence found by the search was admissible. * * * (246 Miss. at 202, 145 So.2d at 156.) (Emphasis added.)
In the case at bar the State relies upon a series of cases which relate to the proposition that the eye cannot trespass: Powell v. State, 184 So.2d 866 (Miss. 1966); Bone v. State, 207 Miss. 868, 43 So.2d 571 (1949). While the law is well established *88 that anything seen by the arresting officer while he is not trespassing can form the basis for a valid search and seizure, this rule is not in operation in the present case. In the Powell and Bone cases, supra, there was no "invasion" of the vehicles by the arresting officers. However, in this case there was such an "invasion" since the highway patrolman admitted that when he returned to appellant's car, he "opened" the left door before shining his light inside. We are nevertheless of the opinion that the search was lawful since the cases previously cited clearly indicate that after the appellant had been lawfully arrested, the arresting officers had the right to search his automobile as an incident to that arrest.
For the reasons previously stated this case must be reversed and remanded for a new trial.
Reversed and remanded.
GILLESPIE, P.J., and RODGERS, JONES and SMITH, JJ., concur.
NOTES
[*] The year in the chart designates the calendar year in which the list was prepared, for use in the May and September Terms of Court of that year and the January Term of the following year. (R. 61)
[**] The State stipulated that for the years 1956-1963, there were approximately 350-400 prospective jurors placed in each year on the Board of Supervisors' list. (R. 68)
[] The Circuit Court Clerk first testified that only 1 Negro was selected in 1965, but later she changed her testimony to 4.
[*] The State stipulated that for the years 1956-1964 there were approximately 150-250 persons called for jury duty each year.