WOOD v. STATE.

No. 39250 October 18, 1954 74 So. 2d 851

*Sam E. Lumpkin,* Tupelo, for appellant.

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appellee.

GILLESPIE, J.

The appellant, Mack Wood, was jointly indicted with Earnest Rose, Robert Smith Ballow, and Walter R. Scott, for the crime of armed robbery. After severance granted Wood was convicted and sentenced to serve ten years in the penitentiary.

The jury was justified in finding the facts as hereinafter stated. On June 18, 1953, Wood and his co-indictees went to the home of Mr. and Mrs. Donald Hendrix on Coontail Road in Monroe County. They rode together in a 1950 model Ford car. They arrived about two o'clock A. M. Rose and Ballow entered the Hendrix home, where Donald Hendrix was dozing on a couch in the living room, his wife being at that time awake and occupying a bed in the bedroom which adjoined the living room. After one of the men introduced himself to Hendrix as "Wilson," the three men went into the kitchen, where resting on the table was a gallon jug containing moonshine liquor. Rose and Ballow refreshed themselves from the jug and told Hendrix they wanted to buy some liquor. Donald told them he had none to sell

but could give them a telephone number of a man who would sell the liquor for $4.00 per gallon. They discussed liquor matters for about fifteen minutes, then Rose and Ballow went outside to consult with Wood and Scott; and presently Rose and Wood returned to the house and Hendrix was again on the couch in the living room. Rose again referred to the purchase of liquor, and then hit Hendrix on the head with a nickel-plated pistol; and after another lick on Hendrix's head with the gun, Rose said, "You are the one that hi-jacked us for over a hundred cases of whiskey in '49." Rose then dragged Hendrix into the bedroom, threw him on the bed, then shoved him off on the floor, and told Wood to "tie him up, Mack"; and Wood tied Hendrix up with seagrass rope. Mrs. Hendrix was also tied up with the same kind of rope. Rose got $1.00 out of Hendrix's billfold, some change from the radio table, and approximately $500 belonging to Donald Hendrix from a handbag which Mrs. Hendrix had placed beside the bed.

At this point Hendrix's feet were untied, and Rose kept a gun to Hendrix's back while he shoved them where he had ten gallons of moonshine liquor hid in the woods. Rose forced Hendrix to drag the whiskey from the underbrush with his hands tied. During this time, Wood was holding a gun on Mrs. Hendrix. After the liquor was loaded in the car in which the men arrived, Rose marched Hendrix back to the house and left him on the living room floor with his hands and feet tied. Rose told Hendrix that if he told the law he would kill him, and Hendrix agreed not to tell the law. Rose or Wood then got Hendrix's gun and both left, after telling Hendrix that if he wasn't the man that hi-jacked them in '49, they would bring the "little roll back and double it."

After Rose, Wood, and the others drove away, Mrs. Hendrix gnawed the rope with which she was bound and freed herself; she then freed Hendrix by cutting the rope with a butcher knife. After daylight, Hendrix and his

wife reported the robbery and Hendrix was treated by a physician, who testified at the trial as to the extent of the wounds, and that they were from four to eight hours old. Hendrix knew Wood, but never saw his face. Wood was identified by Mrs. Hendrix.

The following night, Highway Patrolmen Wiygul and Smith arrested Wood, Ballow, Rose and Scott. Ballow was driving forty miles per hour in a thirty-mile zone. They were in a 1950 model Ford, in which the officers, upon searching it, found three pistols, including a nickel-plated one, and some seagrass rope.

Hendrix is a self-confessed bootlegger of long standing and has been convicted of numerous crimes of assorted variety. There are certain other factual details not necessary to mention here. There were also certain inconsistencies in the testimony which the jury no doubt considered.

■■■ Wood assigns as error the admission in evidence of the several pieces of rope. The evidence showed that the victims were tied up with pieces of small seagrass rope. Patrolman Smith found this rope, placed it in a cellophane bag, labelled it, and it was introduced in that condition, first, in the trial of Rose, and, later, in the trial of Ballow. Patrolman Wiygul found a coil or piece of small seagrass rope in the automobile in which the parties defendant were arrested the night following the robbery. This piece of rope was also placed in a cellophane bag, labelled, and introduced first in the trial of Rose, and later in the trial of Ballow. By the time the trial of Wood came on for hearing, the bags and labels had been lost or torn from these pieces of rope. It was shown that both lots of the rope had been kept by the sheriff until the trial of Rose. It was there identified by the officers finding the same. After the Rose trial, the two lots of rope were handed by a juror to the Circuit Clerk. He kept it under lock until the trial of Ballow, when the ropes were again identified and introduced; but when the

jury returned with their verdict in that case, the bags and labels had been removed and the two lots of rope were returned to the clerk by the jury as one lot, consisting of one piece of rope that came from the car and the several pieces that came from the Hendrix home. The clerk, however, kept all the rope under lock until the trial of Wood when it was admitted after the proof accounted for the whereabouts of all the rope from the time the two lots were found. We think a sufficient chain of identification was made to admit the rope in evidence, although the officers in Wood's trial were unable to swear positively which rope came from which place. The case of Warren v. State, 174 Miss. 63, 164 So. 234, relied on by appellant, is not in point on the facts.

■■■ The lower court allowed proof to be made that after the arrest of the appellant and the others with him an attempt was made to escape from jail; that Wood had helped saw the jail bars; that a quantity of hacksaw blades and a file were found secreted in their place of confinement. Wood contends that this was error, that escaping from jail was a separate offense; and that it was error to admit evidence of another and separate crime than the one for which he was being tried. There is no merit in this contention. The rule is stated in 20 Am. Jur., par. 298, page 276, as follows:

''Evidence of the escape and flight of a person charged with a crime, from jail or the custody of an officer, or of his attempt to escape is competent, in connection with other facts and circumstances, on the question of his guilt, notwithstanding it has only slight tendency to prove guilt, but an escape or an attempted escape may only be shown where the fact that a crime has been committed, for which the accused is being tried, has been shown. Evidence that during confinement before trial, an accused sawed the bars of his cell, assaulted the guard, and attempted to escape is not rendered inadmissible by the fact that he was under two separate indictments for

crimes. The possession of tools suitable for effecting an escape is also an incriminating fact which may go to the jury."

 Wood did not testify. He requested and was refused the following instruction: "The court instructs the jury for the defendant that they as jurors have no right under the law to draw any unfavorable inference against the defendant because he did not testify in this case."

This was error; the instruction should have been given; but we do not deem it harmful error and do not reverse the case because of it.

Section 1691, Mississippi Code of 1942, provides: "The accused shall be a competent witness for himself in any prosecution for crime against him; but the failure of the accused, in any case, to testify shall not operate to his prejudice or be commented on by counsel."

In Funchess v. State, 125 Miss. 140, 87 So. 487, this Court held that it was error to refuse the defendant an instruction similar to the one requested by the appellant in the case at bar. But in that case there were two other prejudicial errors. Moreover, in the Funchess case, the refusal of the instruction was coupled with improper remarks of counsel for the state which could have been construed by the jury in such way as to lead their minds to the fact that the accused did not testify in his own behalf. In the Funchess case, the Court said: "We do not say that the refusal of the court to grant the instruction would in all cases result in a reversal, because it might appear manifestly in some cases that the refusal of the instruction resulted in no injury to the accused in his trial."

In Spencer v. State, 128 So. 770, this Court held that the refusal of an instruction to the effect that the jury should not draw unfavorable inference because defendant did not testify was harmless, the defendant's guilt being manifest.

Mrs. Hendrix had full opportunity to observe Wood during the commission of the crime; she positively identified him as being a participant in the crime; and there was some circumstantial evidence linking Wood to the crime. After careful consideration of the case, we are of the opinion that the refusal of the instruction was not harmful.

The other assignments have been duly considered and we find no reversible error therein.

Affirmed.

*McGehee, C. J.,* and *Hall, Kyle* and *Arrington, JJ.,* concur.