JONES, Justice:
Appellant was convicted in the First Judicial District of Hinds County of burglary and larceny, sentenced to serve six years in the penitentiary, and appeals here.
B. H. Bignon operated under the name of Capital News Company, the place of business being on Palmyra Street, adjacent to a lot on which was situated a Phillips 66 Service Station, in the City of Jackson. In the early morning of August 7, 1967, Capital News Company was forcibly entered and various items and office equipment taken.
The evidence to connect appellant with the burglary was, generally and substantially, as follows: About 1:45 a. m. on August 7 while patrolling from near Clinton eastwardly toward Jackson, Highway Patrolman Carroll passed and observed a car traveling west at an excessive speed in a forty-five mile zone. He turned and followed this car for about a mile and a half. He pulled the car over and while getting out of his car saw the appellant, the driver of the other car, take something from the seat of his car and place it on the floor. While following appellant, he observed matters which led him to believe the driver was, perhaps, under the influence of liquor. When the patrolman stopped appellant, he became of the opinion that appellant was under such influence and arrested him on such a charge. After removing appellant from the car, he saw a pistol on the floorboard, looking from outside. He got the pistol and unloaded it. On returning to the stopped car, he found one Luke therein and arrested him for public drunkenness. On the seat next to Luke was another pistol, an automatic .25 calibre, which witness also took.
There was a young lady on the backseat whom he left in the car temporarily. On the back floorboard, there were some gauges and tools, a crowbar, a pair of pliers, and a small money bank. He observed the back end of the car was sitting low. When asked by the patrolman if he would unlock it, Luke replied he would. The trunk was opened by Luke in the presence of appellant with no objection, and in the trunk was various office equipment, including adding machines, a typewriter, and other items. The car tag was issued, to Southern Trailers.
The court first heard the patrolman’s evidence out of the presence of the jury and adjudicated probable cause for the stopping and arrest, after which the evidence was reintroduced in the presence of the jury.
The evidence further showed the patrolman called an investigator by radio from the patrol who came to the scene. While all the parties were there in custody of Carroll and while the appellant and his two companions were standing near the car, the officer made a list of the equipment, etc. in the open trunk of the car including serial numbers.
All the office equipment, at least one pistol and the bank were positively identified at the trial as having come from the Capital News Company’s place of business.
After the investigation in the presence of the parties, the machines, etc. were left in the car, the car taken to a service station at or near Clinton, locked and left at the station until the next day when the *165 equipment was stored in the evidence room at patrol headquarters.
Two city detectives came Tuesday and identified the stolen articles. Appellant objected to this evidence at the trial, and it was excluded. No search was necessary on this occasion since they were stored and in the possession of the officers.
The burglary was discovered about 7:00 or 7:15 on the morning of the seventh and reported to the officers.
The lady in the car was Mrs. Debbie Louise Franklin. She testified that on the way home from the movie with another girl, they were picked up by a friend of the other girl and rode for a few minutes when she asked him to take her to the “White House” to see appellant. She found him asleep in a booth and awakened him. Appellant said he wanted to go to the “Northside.” He got Luke and appellant said to let the lady drive “because they were drinking.” Later, Luke asked her to drop them off and come back in about thirty minutes to get them. They showed her the way and she dropped them off at a Phillips 66 service station adjacent to the Capital News Company. When she returned, Luke got into the car (she didn’t know where Barrett was) and took her to a laundromat on Bailey Avenue and left her. About five or ten minutes later, appellant and Luke returned to the laundromat and picked her up. She said the little “thing” you keep change in was, at that time, in the car, but she had not seen it before.
The assignment of error poses these issues:
(1) Was appellant entitled to a directed verdict ?
(2) Did the court err in admitting in evidence the articles taken from the car?
Appellant argues the proof is insufficient to show that he committed any burglary or breaking and entering; that breaking and entering'is one element of the crime and the State failed to prove same.
This is the basis of the argument that appellant was entitled to a directed verdict. It is conceded, however, that such element may be proven by circumstantial evidence.
It is our conception that the testimony of the lady, disclosing the various maneuvers of appellant and Luke, and their presence on the lot next to the News Company, together with her statement as to the little bank being in the car the last time appellant picked her up coupled with all the other facts shown, was sufficient to sustain the verdict on that issue.
As to the admission in evidence of the articles taken from the car, it is argued that the machines were seized from the parked car two days after the arrest and search, and that such seizure was a second search of the car and unlawful.
We do not understand the evidence to be as appellant contends. The arrest was around 2 a. m. on Monday. The parties were held with the automobile, trunk open, until an investigator arrived and made a list of the equipment, together with the various manufacturers’ numbers thereon. All of this was in the presence of the appellant and a few minutes after the arrest — just as soon as the investigator could travel to the scene.
The appellant was to be parried to jail. The question naturally arose as to what should be done with the car and its valuable contents. To leave it on the highway unprotected would invite injuries to the car or theft of it and its contents. The patrolman had no immediate way apparently to move the car to town. Consequently, it was stored at a filling station, locked, and .the key retained by the highway patrolman.
On Tuesday, the next day, the articles found in the automobile were sent to patrol headquarters to be stored in the evidence room.
*166 Appellant assumes, evidently, there was a second search because of the last sentence in the following statement of Patrolman Carroll:
They were taken, left in the car, they were taken to the Clinton Texaco Service Station, and stored, still in the car. The car was locked at the Clinton Texaco Service Station, and the next day they were sent to headquarters to the identification bureau, to be stored in the evidence room. I believe that would be on Tuesday, the next day, the two detectives from the Jackson Police Department came out and identified them.
It does not appear, however, that the detectives even examined the machines. The patrol had a list of the equipment with the manufacturers’ numbers. The owner had a similar list. It was only necessary to compare the two lists. There is no evidence that any search or seizure was had that day. The property was already seized by the patrol and in its possession. No detective or city officer testified in the trial to identify the property or to introduce same. It was identified and introduced through the evidence of those employed at the News Company and the highway patrol investigator. They had taken possession of the car containing tools, including a crowbar and pliers, the little bank, and heavy office equipment, occupied by three drunks about two o’clock in the morning traveling at an excessive speed.
The equipment remained in the possession of the patrol. As stated, it was not necessary to research the car, and the evidence fails to disclose there was a second search and certainly no proof or knowledge acquired thereby was used in the trial. No city detective, policeman, or other city officer testified regarding the identity of the equipment. This is omitting the question as to whether the State would have the right to look again at property it had already seized and still had in its possession. Butcher v. State, 210 So.2d 875 (1968).
Appellant suggests the admission of che articles in evidence was erroneous because the arrest was without probable cause. We cannot agree. The officer turned around and followed the car because it was traveling at an excessive speed in a restricted speed zone. As he followed the car approximately a mile and a half, he observed its operation and thought the driver was under the influence of intoxicating liquor. When he stopped the car for speeding, he found the driver and others under such influence. The trial judge heard this evidence out of the presence of the jury and found there was probable cause before it was presented to the jury. In the trial itself, the officer’s charge of driving under the influence was corroborated by the lady who said appellant stated they had been drinking.
There is a total absence of evidence from which it could be said the arrest was a pretext and subterfuge to enable the officer to search.
As heretofore shown, when he stopped the car for speeding between one and two o’clock in the morning, he found the driver and his male companion, under the influence of liquor; he saw two pistols in view; he saw a crowbar, pliers, and a small bank in open view; and he saw the car was so heavily loaded in the rear that it was sagging. We hold that neither the arrest nor the search incident thereto was illegal.
Under the facts of this case, none of the cases cited by appellant are applicable.
Affirmed.
GILLESPIE, P. J., and RODGERS, BRADY and INZER, JJ., concur.