236 So.2d 408 (1970)
Earlie WRIGHT, Jr.
v.
STATE of Mississippi.
No. 45873.
Supreme Court of Mississippi.
June 1, 1970.
Rehearing Denied July 2, 1970.
*409 Billy J. Jordan, Jerome Lohrmann, Columbus, for appellant.
A.F. Summer, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., and Timmie Hancock, Special Asst. Atty. Gen., Jackson for appellee.
RODGERS, Justice:
The appellant, Earlie Wright, Jr., was indicted, tried and convicted of having in his possession "a narcotic drug, to-wit marijuana", in the Circuit Court of Lowndes County, Mississippi.
The appellant's conviction came about under the following circumstances. On the night of August 31, 1968, the appellant, Earlie Wright, Jr., got out of an automobile in front of the Elks Club in the city of Columbus, Mississippi. He went up to the door of the lodge. An officer requested the appellant to show his identification card. The appellant was slow in complying with the officer's request. Two policemen testified that appellant was drunk and disorderly. The officers arrested the appellant, "patted" him down, and discovered a pistol on his person. They then took him to police headquarters. One of the officers took the contents of his pockets and put them in an envelope. The envelope was marked by another officer. In the process of searching the prisoner, an officer discovered a small brown package in the prisoner's rear pants pocket. The officer examined the package and discovered twelve (12) small rolled cigarettes. The size and contents of the cigarettes aroused the officer's curiosity. He burned one of the cigarettes and discovered that it had a peculiar odor. The package was placed in the "evidence locker" at the police headquarters and later turned over to the chief of police. It was delivered to the Mississippi Crime Laboratory, and upon examination, it was discovered that the cigarettes contained marijuana.
The appellant testified that a "guy named Jimmy something * * * handed me a packet and said: `Hold this for me until I return'." Appellant did not locate the person named "Jimmy" as a witness.
On appeal to this Court the appellant complains that he did not receive a fair trial because (1) the trial court permitted the introduction of evidence with reference to the package of cigarettes alleged to have been obtained by an illegal search of the appellant; (2) the trial court permitted the introduction of demonstrative evidence without requiring preliminary proof of the condition of the cigarettes from the time of seizure until they were examined by the expert witness; (3) the trial court erroneously permitted the district attorney to introduce a witness who had previously testified and had returned to the jury room; (4) the trial court refused to conduct a preliminary hearing on a motion to suppress illegally obtained evidence; (5) Section 6846, Mississippi Code 1942 Annotated (1952) is unconstitutional because it establishes a crime without an evil intention.
In order to move directly to the predominant issues involved in this case, we think that it is only necessary to point out that issues number two and three are issues which are usually determined within the sound discretion of the trial judge, and, unless this judicial discretion has been so abused as to be prejudicial to the defendant, this Court will not reverse the ruling of the trial court. The following authorities listed under the foregoing issue numbers will suffice to illustrate this rule: Second issue  29 Am.Jur.2d Evidence § 769 (1967); 20 Am.Jur. Evidence § 717 (1939); 32 C.J.S. Evidence § 602 (1964). *410 See also: Bester v. State, 222 Miss. 706, 77 So.2d 270 (1955); Wood v. State, 221 Miss. 901, 74 So.2d 851 (1954). Third issue  Cannon v. State, 190 So.2d 848 (Miss. 1966); Fondren, Alias Taylor v. State, 253 Miss. 241, 175 So.2d 628 (1965); Stokes v. State, 240 Miss. 453, 128 So.2d 341 (1961); Triplett v. State, 230 Miss. 707, 93 So.2d 654 (1957); Thomas v. State, 103 Miss. 800, 60 So. 781 (1913). We find no error in the ruling of the court on these issues.
The appellant complains (issue number four) that the trial court erred in not granting a preliminary hearing upon a motion to suppress illegally obtained evidence under the rule in Henry v. State, 253 Miss. 263, 174 So.2d 348 (1965). This suggestion is not well taken for two reasons. First, no motion was made to suppress the evidence, and, second, if such a motion had been made and overruled, this would not have been error since we hold hereafter that the testimony was properly admitted in evidence on the trial. The record shows that the motion made by the appellant in fact requested the court to dismiss the charge against appellant rather than to suppress certain testimony.
Turning now to the two issues that we feel should be discussed more fully (the first and fifth), we repeat for clarity that it is the first contention of appellant that the examination of the contents of a brown package was an unlawful search and seizure because the officer's act was forbidden by the Fourth Amendment to the United States Constitution.
The Fourth Amendment to the United States Constitution has been made applicable to the states by a manipulation of the Fourteenth Amendment to the United States Constitution. Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
However, long before these cases were reported, we had, in Mississippi, made the evidentiary exclusionary rule a part of our case law under the authority of Section 23, Mississippi Constitution (1890). One 1948 Pontiac Automobile v. State, 221 Miss. 352, 72 So.2d 692 (1954); Williams v. State, 129 Miss. 469, 92 So. 584 (1922); Tucker v. State, 128 Miss. 211, 90 So. 845 (1922). The many cases gathered under Section 23, Mississippi Constitution (1890) indicate the determination of this Court to preserve the constitutional right of our citizens to privacy.
The appellant has cited several United States cases which we feel should be examined. The case of Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), is a case where two persons were arrested for vagrancy. After they were taken to the police station, their automobile was towed to a garage. Later, the automobile was searched and women's stockings cut for mouth and eye holes, ropes, pillow slips and illegal license plates were found in the automobile. One of the persons arrested confessed that they intended to rob a bank fifty-one (51) miles from the place of the arrest. This information was given to the federal officers and a prosecution was instituted in the federal court. The defendants objected to the introduction of this physical evidence upon the ground that the search of the automobile was not an incident to a lawful arrest. The Supreme Court held that:
"* * * Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145, supra, * * *."
(376 U.S. at 367, 84 S.Ct. at 883, 11 L.Ed.2d at 780)
This Court has previously held this rule to be true in this state in Smith v. State, 240 Miss. 738, 128 So.2d 857 (1961), and we repeated our holding in King v. State, 230 *411 So.2d 209 (Miss. 1970); May v. State, 199 So.2d 635 (Miss. 1967); and Coston v. State, 252 Miss. 257, 172 So.2d 764 (1965).
In the case of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the United States Supreme Court, in a six-two decision, sharply limited the scope incident to a lawful arrest by holding that such a search of the prisoner must be limited to the person of the prisoner and "the area from within which he might gain possession of a weapon or destructible evidence." See also: Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969); Von Cleef v. New Jersey, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728 (1969).
However, eight years before Chimel, this Court said in Smith v. State, 240 Miss. 738, 128 So.2d 857 (1961):
"* * * Unlike the search made under a search warrant, which describes the property to be searched, the search, as an incident to an arrest, is a limited search. It extends only to the `immediate presence' of the prisoner, the possessions in his `immediate control' and in his `immediate surroundings'. * * *." (240 Miss. at 742, 743; 128 So.2d at 859)
In the case of Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the Supreme Court of the United States held that a search of an automobile seized one week after the owner's arrest and held as evidence under a forfeiture charge was not unreasonable since the search was closely related to the charge for which the arrest was made. This case seems to be an exception to the general rule and this was pointed out in the dissent.
The search in Cooper was permitted to be admitted in evidence because the automobile was impounded "as evidence" pursuant to a California statute permitting seizure and forfeiture of vehicles used in violation of California narcotics laws. The Court said:
"* * * [T]he reason for and nature of the custody may constitutionally justify the search. * * *" (386 U.S. at 61, 87 S.Ct. at 791, 17 L.Ed.2d at 733)
The Supreme Court of Mississippi followed Cooper in the case of Gordon v. State, 222 So.2d 141 (Miss. 1969), not upon the ground that the automobile was being forfeited as in Cooper, but upon the ground that the automobile was itself evidence and its contents were necessarily inventoried. There is, however, no Mississippi statute requiring such a procedure.
In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), the Court held that officers could not enter an apartment and arrest an occupant simply because they smelled opium burning. This opinion is based upon the proposition that the officers had ample time to apply for a search warrant of a permanent building as differentiated from an emergency situation such as the search of a "movable vehicle".
We do not believe, however, that cases such as as Johnson, Cooper and Gordon, supra, are applicable here. We pointed out in Smith v. State, 240 Miss. 738, 128 So.2d 857 (1961), that the search of a prisoner as a part of, and as an incident to, an arrest is in a different legal category from the constitutional prohibition against a search for contraband and other evidence in houses and on real property. We said:
"* * * It is the common-law duty of an officer after having legally arrested a defendant to search his person, and the surroundings of the prisoner. * * *" (240 Miss. at 742, 128 So.2d at 859)
In the case of Rent v. United States, 209 F.2d 893 (5th Cir.1954), that court said:
"The right to search incident to an arrest is, of course, a limited right. As expressed in several of the cases, it is limited to a search `contemporaneously' conducted. * * *" (209 F.2d at 897)
In the instant case the officers took the personal possessions of the defendant after *412 he was arrested. This search is always necessary for many reasons. Among those are: to discover weapons and means of escape; to prevent means of injury to the prisoner and others; to discover necessary medical requirements; to discover evidence in connection with the charge for which accused was arrested; to discover wounds and need for immediate first aid, and to preserve the property of the defendant.
In the case of Barrett v. State, 219 So.2d 163 (Miss. 1969), we pointed out that an officer, after arresting a person, should not leave his automobile on the highway, but should put it in a safe place. However, we do not here pass upon whether or not it is ordinarily the official duty of an officer to preserve the property of a person arrested  see Toliver v. State, 133 Miss. 789, 98 So. 342 (1923)  although it may be said that the trend of authorities is moving in that direction  see 32 A.L.R. 685 (1924). It is, nevertheless, the practice of police officers to inventory the personal belongings taken from a prisoner and to put them in a place for safekeeping. This is usually done in the presence of the prisoner and a witness so that the prisoner may not later contend that his money and other belongings were confiscated by the officers.
The duty of the officers to search the person of the defendant in the instant case and the right of the officers to inventory and keep the personal effects of the prisoner was proper under the facts here shown.
The specific issue, then, is whether or not the officers had the authority to look in the brown package, found in the defendant's possession, after it was taken from the prisoner.
In the case of Barrett v. State, supra, a highway patrol officer searched the defendant's automobile and listed the various manufacturer's serial numbers on certain office machines found in the automobile at the place of arrest. These numbers were later identified by city police as being manufacturers' numbers listed with them for stolen property. This Court held that this testimony was admissible. This is significant because the highway patrolman did not know at the time of the search that the office machines were contraband.
The specific question here involved has been presented to other state courts and the holdings in some of these cases are interesting and very persuasive upon our determination on this issue. In the case of State v. Parra, 104 Ariz. 524, 456 P.2d 382 (1969), the officers arrested defendant on a charge of burglary. They searched the accused and found a wallet. In the wallet they found a rent receipt for an apartment. Another officer obtained a search warrant for the apartment. In the apartment they found a considerable amount of marijuana. Upon a motion to suppress the evidence obtained by a search of the apartment, based upon the theory that the rent receipt found in accused's wallet was obtained by an illegal search, the Court said:
"* * * [W]e hold that the police incident to the arrest could remove defendant's wallet from his person and examine its contents. * * *" (104 Ariz. 524, 456 P.2d at 384)
In the case of Taylor v. Superior Court, Cal. App., 79 Cal. Rptr. 677 (1969), the accused petitioned the court to dismiss proceedings upon the ground that evidence against the petitioner was obtained by an illegal search. It appears that the patrolling officers stopped the accused to check his automobile, but learned by radio that a warrant had been issued for his arrest. Whereupon, the officers arrested the accused and required him to empty his pockets. One of the officers observed a cigarette lighter, and, taking it from the hood of the automobile, he took it apart and discovered a quantity of hashish. The officer testified that the cigarette lighter could be used as a weapon or could be used to set fire to a vehicle. The officer said that Schick-type razor blades were often concealed *413 in cigarette lighters. The court, after holding that a search of a person under arrest was permissible, said:
"* * * If the officers had found a gun on the petitioner, they certainly would have checked to see if it was loaded * * *. It would appear reasonable that the officer would exercise a higher degree of care for his safety with a person whose cigarette lighter contained a razor blade than one whose cigarette lighter contained only some gasoline-soaked cotton and some flint. * * *" (79 Cal. Rptr. at 681)
The court then held the search to be reasonable and the petition to dismiss the case was overruled and the delay of the proceedings terminated.
The case of People v. Stewart, 189 Cal. App.2d 176, 10 Cal. Rptr. 879 (1961), where marijuana cigarettes were found upon search of a person arrested, and the case of People v. Kraps, 238 Cal. App.2d 675, 48 Cal. Rptr. 89 (1966), where marijuana was found in a film can in the possession of the arrested accused, were cited with approval in Taylor. A careful examination of these authorities and a review of our own cases have convinced us that the search of the brown package found in the possession of the defendant in the instant case was permissible and the introduction of evidence obtained by the search was properly admitted on the trial of appellant.
Finally, the appellant charges that Section 6866, Mississippi Code 1942 Annotated (Supp. 1968), is unconstitutional because it provides a penalty for the violation of Section 6846, Mississippi Code 1942 Annotated (1952); that the last mentioned section does not require that the accused be guilty of "evil intention" in the commission of the crime of possession of marijuana. This argument is based upon the testimony of the defendant wherein he claimed that a guy by the name of "Jimmy something" gave him the brown package later found to contain marijuana. He claimed that he did not know what the package contained.
Section 6846, Mississippi Code 1942 Annotated (1952), is in the following language:
"It shall be unlawful for any person to manufacture, possess, have under his or her control, sell, prescribe, administer, dispense, or compound any narcotic drug except as authorized in this Act."
It is contended that under the common law a crime requires two elements: (1) an act, and (2) an evil intention. "This view is expressed in the maxim that an act does not render one guilty unless the mind is guilty." 21 Am.Jur.2d Criminal Law § 81 (1965). This rule is expressed in the Latin maxim Actus non facit reum, nisi mens sit rea. In studying the meaning and origin of the "mens rea" rule, one must keep in mind the fact that criminal law is divided not only into grades as to enormity or seriousness, viz., misdemeanors and felonies, but is also divided into crimes which, in their very nature, are inherently wrong (mala in se), and crimes which the law does not consider to be naturally wrong but which are necessarily imposed for the good order, safety, welfare, health and morals of the people, and for that reason such acts are prohibited by law (mala prohibita). They are in the nature of police regulations. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922).
Although it may be said that intent is a necessary element of all crimes, this does not necessarily connote conscious wrongdoing. There are statutory crimes in which the law categorically forbids certain acts without regard to the state of mind of the actor. In that instance "* * * the intent to do that act is the only element necessary to complete the offense." 21 Am.Jur.2d Criminal Law § 81 (1965). The Legislature may define a crime which depends on no mental element and consists only of forbidden acts or *414 omissions. 14 Am.Jur. Criminal Law § 16 (1938). Where acts constituting such an offense have been defined by the Legislature, criminal intent need not be proven by the prosecution. Criminal intent not expressed in the statute is not always required where the offense is merely malum prohibitum. Lee v. State, 244 Miss. 813, 146 So.2d 736 (1962); State v. Fulco, 194 La. 545, 194 So. 14 (1940); People v. Sybisloo, 216 Mich. 1, 184 N.W. 410 (1920). Statutes which do not require "guilty knowledge" have been generally held to be constitutional, 21 Am.Jur.2d Criminal Law § 90 (1965), unless such laws invade some specific constitutional right. State v. Johnson, 163 Miss. 521, 141 So. 338 (1932).
We are of the opinion that Sections 6846, Mississippi Code 1942 Annotated (1952), and Section 6866, Mississippi Code 1942 Annotated (Supp. 1968), are not in conflict with the State nor Federal Constitution.
The defense offered by the accused to the charge of willful possession of marijuana was that he did not know what the package contained. In the case of United States v. Balint, supra, the United States Supreme Court pointed out that where statutes are made for the protection of the public, ignorance of the fact or the state or thing contemplated by the statute is no excuse. The law makes it the duty of the individual to know the facts, and if he acts without such knowledge, he does so at his own risk since it is for the jury to determine whether or not his acts violated the law.
After careful examination of the record and authorities, we have reached the conclusion that there was no reversible error committed upon the trial of this case. The judgment and sentence of the trial court must, therefore, be affirmed.
Affirmed.
GILLESPIE, P.J., and JONES, BRADY and SMITH, JJ., concur.