260 So.2d 425 (1972)
Donald J. WOLF
v.
STATE of Mississippi.
No. 46695.
Supreme Court of Mississippi.
March 27, 1972.
Rehearing Denied April 17, 1972.
*427 Billy J. Jordan, Columbus, for appellant.
A.F. Summer, Atty. Gen., by William Jeff East, Sp. Asst. Atty. Gen., Jackson, for appellee.
GILLESPIE, Chief Justice:
Donald J. Wolf was convicted in the Circuit Court of Lowndes County of possession of marijuana. He was sentenced to two years in the state penitentiary and fined the sum of $1,000. Wolf was also found guilty of constructive contempt of court and sentenced to thirty days in jail and fined $250. He appeals both judgments.
The defendant was driving a Karmann Ghia Volkswagon automobile on a Columbus street at about 10:15 p.m., when he was stopped by Sergeant Harry Dowdle of the Columbus Police Force. The car was searched and a marijuana cigarette was found in a plastic bag lying on the rear seat. Wolf and his two passengers were then arrested for possession of marijuana and were transported to police headquarters in Sergeant Dowdle's police car, while another officer who had been summoned to the scene drove Wolf's car to police headquarters where it was parked on the police lot outside the door of the chief of detectives. After arriving at headquarters, Wolf was booked for possession of marijuana and his passengers, David Toole and Gail Loftis, were released. After their release, Miss Loftis and Toole talked to Officer Dowdle for sometime and they indicated there was more marijuana in the defendant's car. Dowdle then went to Wolf's car and found a bag of marijuana in a plastic bag over the driver's sun visor.

I.
One assignment of error raises the question whether the officer had probable cause to stop and make the initial search of defendant's automobile. Defendant relies on Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and O'Bean v. State, 184 So.2d 635 (Miss. 1966).
Defendant concedes that the informer involved in this case was reliable because the proof showed that he had furnished reliable information many times before. The unidentified informer first called Chief of Detectives Walters at about 6:30 p.m., and told him that there was a "pot party" in progress at 513  6th Street South in Columbus, Mississippi. Chief Walters then communicated with Sergeant Dowdle and told him to check the address and to take the tag numbers of the cars parked there. This was done. About 10:10 p.m., the informer called Chief Walters and told him that people were going out to a Karmann Ghia automobile and smoking "pot." The informer also told Walters that defendant Wolf would be leaving shortly, driving a beige colored Karmann Ghia Volkswagon with a Florida license tag, and that marijuana would be in the automobile. Walters then called Dowdle and gave him the information furnished by the informer. Walters instructed Dowdle to proceed to the address and if he saw the described Karmann Ghia automobile moving to stop and search it.
Sergeant Dowdle immediately went to the address given him, and just as he arrived, the Karmann Ghia automobile, driven by defendant Wolf, was leaving the driveway. A short distance away, Sergeant Dowdle stopped the car, and told the driver he was going to search it. He then asked Wolf and his two passengers to get out of the automobile, after which he found a marijuana cigarette in a plastic bag lying on a rear seat. Wolf and his *428 passengers were then arrested for possession of marijuana.
On the probable cause question, the standards applicable to a search of an automobile without a warrant are substantially the same as those required for a search warrant. Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).
Aguilar laid down the two-pronged test applicable to the factual basis supporting a magistrate's assessment of probable cause for a search warrant, and that test applies with respect to an officer's assessment of probable cause for a warrantless search. As already stated, the defendant in this case concedes that the informer involved here was reliable under the Aguilar test. It remains to be determined whether the evidence offered on the motion to suppress was sufficient to meet the Aguilar basis-of-knowledge test and applied and expounded on in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In the later case of United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), the Court again considered the requirements of the underlying factual basis necessary for the issuance of a search warrant, and enunciated the court's commonsense and nontechnical approach in reviewing probable cause questions by quoting from United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), as follows:
[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one here, must be tested in a commonsense and realistic fashion. They are normally drafted by the non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting. (91 S.Ct. at 2079, 29 L.Ed.2d at 730).
In Spinelli, the Court recognized the importance of the detail with which an informer describes the accused's criminal activity, saying:
In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation. (393 U.S. at 416, 89 S.Ct. at 589).
In White v. United States, 448 F.2d 250 (8th Cir.1971), the Court upheld an investigative stop because the informer's tip was specific, containing considerably more detail than that disapproved in Spinelli. The Court stated:
Here the informant's reliability was bolstered both by the specificity of the tip and by the independent corroboration of a substantial number of the facts it contained. It is true that at the time of the stop the conclusion that the defendant was connected with the crime had not yet been independently corroborated but that is generally the situation with most investigations, and we do not think that is determinative in a situation where the police are stopping for purposes of investigation only and not for purposes of arrest. (448 F.2d at 253).
In Strode v. State, 231 So.2d 779 (Miss. 1970), this Court, in determining whether the two-part test of Aguilar and Spinelli were satisfied, stated "probable cause is a practical, nontechnical concept, based upon the conventional considerations of everyday life upon which reasonable and prudent men, not legal technicians, act." (231 *429 So.2d at 782). The Court continued, stating:
In short, under the basis-of-knowledge test, the informer must have obtained his knowledge by personal observation or in some other dependable manner rather than through casual rumor. The second reliability test is an attempt to guard against tips provided by untruthful or unreliable informers, and suggests that an informer is credible if he has provided truthful tips in the past. Moreover, the information may be deemed reliable if corroborated by independent investigation. Both tests require only that some of the underlying circumstances be sworn to. Furthermore, in Spinelli, the Court indicated that the basis-of-knowledge test could be fulfilled without a statement of the circumstances from which the informer derived his information; i.e., if a tip is sufficiently detailed, it may be self-verifying, and one may conclude that the informer was not relying on mere rumor. In the instant case, the tip, because of its great detail and corroboration, was self-verifying, and in addition, there was independent corroboration by the New Orleans officers. Given substantial compliance by disclosure of some of the underlying circumstances relevant to each of the two tests, magistrates and reviewing courts have ample room in which to use common sense. (231 So.2d at 783).
In the present case the informer told Chief Walters that (1) a "pot party" was in progress at a certain address; (2) that the people at the party were going to and from the defendant's Karmann Ghia automobile and were smoking "pot" therein; (3) that the Karmann Ghia, accurately and precisely described, would be leaving the premises shortly; (4) that defendant Wolf would be driving; and (5) that the automobile would contain marijuana. In our opinion this detailed information is self-verifying and to a considerable extent was corroborated before accused's automobile was stopped. This information is far more than the casual rumor or tip which Aguilar and subsequent cases condemned. We think that the basis-of-knowledge test required by Aguilar was satisfied. Because of the infinite variety of situations that arise in the course of criminal investigations, it is impractical, if not impossible, to lay down a precise test that will apply in all cases.

II.
The next question is whether the continuation of the search of defendant's automobile after it was removed to the police station was a violation of his Fourth Amendment rights.
Defendant was driving the car when it was stopped by Sergeant Dowdle. Miss Loftis was on the righthand front seat and David Toole was riding on the rear seat. The evidence offered on the motion to suppress showed that all of the parties, including defendant, had been smoking marijuana that night, and defendant showed evidence of being "high" at the time of his arrest. After they were taken to the police station, Officer Dowdle was instructed by Chief Walters to confine defendant and release Miss Loftis and Toole. Thereupon, defendant was locked up, after which Miss Loftis and Toole talked to Sergeant Dowdle and told him they had all been smoking marijuana, including defendant. Toole asked Sergeant Dowdle if he found only one joint of marijuana, and then Miss Loftis said, "What about the packet in the ashtray?" Sergeant Dowdle then went to the car which was still parked on the police lot outside the chief's office and found nothing in the ashtray, but found a plastic bag containing marijuana over the sun visor on the driver's side. When the car was originally stopped about two blocks from 513  6th Street South, the vehicles were on 4th Avenue, which at that point was very narrow, traffic was backing up, and another detective's car had come up behind Wolf's automobile. It was very cold and Miss Loftis was standing out in the street barefooted. Officer Dowdle testified that for this reason it was not feasible *430 to complete the search of the car at the point where it was stopped.
Defendant contends that the search at the police station was illegal within the meaning of the Fourth Amendment, and that there was ample time to obtain a search warrant. He relies on Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
In Preston, the accused was arrested for vagrancy in the early morning hours and his vehicle towed to a police garage. While Preston and his companions were being booked and fingerprinted, an officer went to the glove compartment of Preston's car and discovered a gun. He then searched the trunk of the vehicle and found evidence which was later useful in convicting Preston of conspiracy of robbery of a federally insured bank. The Supreme Court reversed the conviction, holding that the search incident to arrest is justified only by the need to seize weapons and to prevent the destruction of evidence, but "these justifications are absent where the search is remote in time or place from the arrest." (376 U.S. at 367, 84 S.Ct. at 883).
In Chimel, the defendant was arrested at his home under an arrest warrant for burglary of a coin shop. Incident to the arrest and without a search warrant, officers searched the entire three-bedroom home for about one hour, seizing evidence which was admitted in evidence over defendant's objection. The Supreme Court reversed this judgment, ruling that a search was unlawful because the justification for a search incidental to an arrest was limited to "the arrestee's person and the area within his immediate control."
Again, in Coolidge, the search was incidental to an arrest. The arrest was made in the defendant's house, and the automobile which was illegally searched was in the driveway. Moreover, the automobile was seized, moved away, and an extensive search was thereafter made. These cases are authority for the proposition that a warrantless search incident to arrest is limited both in time and scope. In Preston, it was limited in time for the obvious reason that after the accused was safely locked up there was no justification for a search to seize weapons which the accused might use in his escape or to prevent the destruction of evidence. In Chimel, the search incident to arrest was limited in scope to "the arrestee's person and the area within his immediate control."
The present case is controlled by Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925), and the recent case of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), reaffirming the long standing Carroll doctrine. These cases permit a search of a vehicle where there is probable cause to believe it contains evidence of a crime. A search of this type is totally different insofar as the Fourth Amendment problem is concerned from a search incident to an arrest.
The Carroll doctrine permits a warrantless search of an automobile if there be probable cause to believe that the automobile is mobile and contains contraband or other items which offend against the law. The probable cause standard under this rule is at least as stringent as that required for a search warrant. Unlike the warrantless search of a motor vehicle incident to arrest, probable cause relates not necessarily to the guilt of any individual but to the reasonable belief that there is evidence in a particular automobile. There may be probable cause for the arrest of the driver and also probable cause for the search of an automobile independent of the arrest.
Insofar as the scope of the arrest is concerned when made under the Carroll doctrine the officer may search any place in the car where the items sought might be reasonably found. In Chambers, two men robbed a service station and carried off the currency in a right-hand glove. One of *431 the men was wearing a green sweater and the other was wearing a trench coat. Witnesses reported that they saw four men speed away from a nearby parking lot in a blue station wagon. Shortly thereafter, an automobile answering the description and carrying four men was stopped about two miles from the scene of the robbery. Chambers was in the vehicle, wearing a green sweater, and one of the other men was wearing a trench coat. The occupants were placed under arrest but no search was conducted at the scene. The vehicle was taken to the police station where an immediate search was unsuccessful. The officer later returned to the car and continued the search, and on this occasion found two revolvers, a right-hand glove containing small change, and credit cards taken from one of the robbery victims. The Supreme Court upheld the search and commented on the constitutional difference between the search of an automobile and a home or office. The decision was placed squarely on the Carroll doctrine. The Court said that the search at the police station was clearly too remote in time and place to be justified as incidental to the defendant's arrest, and noted that the search of an automobile on probable cause is based on a theory wholly different from that justifying a search incident to an arrest. The right to search and seizure of an automobile are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offended the law. The Court said that removal of the car to the police station was justified because the arrest was made in a dark parking lot in the middle of the night, and a careful search at that point was impractical and perhaps not safe for the officers. Moreover, the Court said that, "It would serve the owner's convenience and the safety of his car to have the vehicle and the keys together at the station house."
The question of mobility was argued in that case and it was contended that because of the preference for judicial determination, the station wagon should have been held by the police while a warrant was obtained, but the Court stated that it could see no constitutional difference between "on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."
The probable cause that gave rise to the initial stop of defendant Wolf and cursory search of his car still existed when the additional search was made at the police station. Chambers is authority for the proposition that where there is probable cause to search an automobile which is mobile the officers may validly continue the search subsequent to an initial cursory search under some circumstances. It should be noted, however, that in Chambers, as in the present case, the time elapsing between the original cursory search and the completion later was brief.
The validity of continuing the search at the police parking lot presents a close question and officers would make a mistake to conclude that the warrant requirement no longer applies to automobiles. The officer who makes a warrantless search when there is time to obtain a search warrant takes a calculated risk of having his efforts nullified by the suppression of the evidence if the search is determined to be invalid. Officers will be well advised to obtain a search warrant whenever practical.
We are of the opinion that Chambers is authority for the validity of the search made at the police station.

III.
Defendant assigns as error the refusal of the trial court to grant his requested peremptory instruction requiring the jury to acquit the defendant. This raises the question whether the proof was sufficient to make a jury issue as to defendant's guilt. We hold that it was.
Appellant cites and relies upon Sellers v. City of Picayune, 202 Miss. 741, 32 So.2d *432 450 (1947), and Baines v. State, 218 Miss. 240, 67 So.2d 300 (1953), and Boyd v. State, 204 So.2d 165 (Miss. 1967). Defendant contends that as a matter of law the proof was insufficient to exclude every other reasonable hypothesis than that of guilt. He calls attention to the fact that there were about fifty people at the party at 513  6th Street South, and that appellant's automobile was parked just outside the door to the apartment where the party was held, was reasonably accessible to the guests, and had been used by various persons during the evening.
These facts, the defendant's testimony, and all of the circumstances relied upon by appellant to show that other people could have placed the marijuana in the automobile were factors to be considered by the jury, and the jury could have accepted defendant's testimony that he did not know marijuana was in his automobile.
In Curry v. State, 249 So.2d 414 (Miss. 1971), also cited and relied upon by defendant, the Court stated the rule concerning possession as follows:
What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of "possession" is a question which is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances. (249 So.2d at 416).
The evidence in this case showed the following: (1) The automobile belonged to the defendant; (2) defendant was driving the automobile; (3) defendant was a mechanic at the Columbus Air Force base and the marijuana cigarette found on the rear seat of his automobile, and the marijuana found over the sun visor were contained in plastic bags of the type used by the Air Force for containing automobile parts, which bags were available to the defendant at his place of work; and (4) the plastic bag of marijuana found over the sun visor was in the immediate proximity of the defendant.
It is true that it was possible some other person could have put the marijuana on the back seat and over the sun visor without the defendant's knowledge, but this was a question for the jury. We hold the court correctly refused to grant the requested peremptory instruction. The cases relied upon by defendant are distinguishable on the facts.
Possession of contraband may be actual or constructive, and may be joint or individual. Two or more persons may be in possession where they have joint power of control and an inferable intent to control jointly. Shaw v. State, 248 Miss. 823, 161 So.2d 629 (1964); Johnson v. State, 246 Miss. 182, 145 So.2d 156 (1962).

IV.
The district attorney filed an affidavit charging Donald Wolf with constructive contempt of court, and at a hearing conducted after his conviction of possession of marijuana, the following facts were developed. Wolf's case was set in the trial court for Wednesday, May 26, 1971, and the defendant knew of this setting. He failed to appear when court opened on the morning of the 26th. He still had not appeared when the court reconvened about 1:00 p.m., and thereupon the trial court discharged the jury about 1:45 p.m., since there was no case to be tried. About 2:30 p.m., defendant and his attorney appeared in court and went to the judge's chambers and apologized for being late. The defendant took the stand and stated that he arrived at his lawyer's office in Columbus at approximately 2:00 p.m., on May 26, 1971. He did not state when he arrived in the City of Columbus. He said *433 that his home was Cocoa Beach, Florida, and his explanation for not appearing at court on time was, "I was having car trouble all the way from my house to here." He was asked who worked on his car and he said "I did."
On cross-examination, he said that he had left "a day early to get here." The explanation contained no fact as to what kind of car trouble the defendant had, when he left Florida, when he got to Columbus, nor why he did not telephone that he would be late.
The trial court must have authority to conduct the court in an orderly, efficient and business-like manner, and should not be deprived of the power to punish for contempt those who do not appear at the proper time. The court lost an entire day's operation and the defendant's explanation is lacking of any convincing proof showing a valid reason why he failed to appear at the proper time. We find no error in adjudging the defendant guilty of contempt.
This case is in all respects affirmed, except that the sentence for possession of marijuana is vacated in accord with the decision in Johnson v. State, (decided this date) 260 So.2d 436, and the case is remanded to the trial court for the sole purpose of re-sentencing defendant in accordance with the opinion in Johnson v. State, supra.
Affirmed and remanded for re-sentence.
JONES, BRADY, INZER and ROBERTSON, JJ., concur.
RODGERS, Presiding Justice (concurring).
After having reviewed the facts in this case and having again studied the cases involving the search of an automobile, I reluctantly concur with the opinion of this Court in this case, not so much because I approve of our holding herein, but, rather, to point out the trend of our opinions and to avoid as far as possible further encroachment upon the rights of the citizens of Mississippi to privacy, and to be let alone, under the mandates of the Constitution of the United States and the Mississippi Constitution.
At the outset we should remember that all searches and seizures are unreasonable unless they are made according to law, and that the law as to search and seizure is to be construed strictly against the State. Adams v. State, 202 Miss. 68, 30 So.2d 593 (1947).
It may be said with some degree of certainty, that a search of an automobile or other motor vehicle as incident to an arrest must be conducted contemporaneously with the arrest, as early as possible, and as near to the place where the arrest occurred as reasonably possible, and that an extended delay in making a warrantless search will not be considered a search incident to an arrest. See the many cases collected by Fisher in his book on Search and Seizure, Section 114, p. 210 (1970).
We have from time to time pointed out in our opinions that a warrantless search may be made of a person lawfully arrested (Smith v. State, 240 Miss. 738, 128 So.2d 857 [1961]; Hamburg v. State, 248 So.2d 430 [Miss. 1971]), but such searches are limited in scope as to time and place. In the case of Curry v. State, 249 So.2d 414 (Miss. 1971) the search was made immediately in the presence of the defendant. In the case of Hogan v. State, 235 So.2d 704 (Miss. 1970) the search was immediately made. In Watts v. State, 196 So.2d 79 (Miss. 1967) the search was made immediately. In Gordon v. State, 222 So.2d 141 (Miss. 1969) the search was made immediately after the automobile was taken to the Highway Patrol Headquarters. In Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (1962), the search was made within thirty minutes after the arrest. In Barrett v. State, 219 So.2d 163 (Miss. 1969), the search was made within a few minutes after the arrest.
In Nobles v. State, 241 So.2d 826 (Miss. 1970) we pointed out that the "exigencies of the situation" permitted a search of an *434 automobile thought to be a "getaway automobile" while the officers were in "hot pursuit" of burglars.
In Gearing v. State, 185 So.2d 652 (Miss. 1966) the automobile was immediately searched. In Powell v. State, 184 So.2d 866 (Miss. 1966) the search was made immediately. Wright v. State, 236 So.2d 408 (1970) and Jackson v. State, 243 So.2d 396 (1971) are based upon the right to inventory defendant's property after the defendant's arrest.
On the other hand, we have held that a search of an automobile without a search warrant three hours after the arrest was not incident to an arrest. Coston v. State, 252 Miss. 257, 172 So.2d 764 (1965). In Williamson v. State, 248 So.2d 634 (Miss. 1971) we held that a search of a truck in the courtyard the morning after an arrest was too remote. In King v. State, 230 So.2d 209 (Miss. 1970) we held that a search the morning after the arrest was illegal.
There is one case in which we held that where the automobile was a part of the evidence of the crime alleged to have been committed, that a search the next morning after the arrest was legal. See: Dorsey v. State, 243 So.2d 550 (Miss. 1971).
It has often been held by many courts in the United States, including the United States Supreme Court, that the standard of validity of any search is whether or not the search is reasonable. A search incident to a valid arrest may become unreasonable if conducted with undue intensity.
The Supreme Court of Oregon had this to say:
"Even if a search is reasonable with reference to time and space, it may be held unreasonable if it is of undue intensity. The nature of the crime for which an arrest is made and the character of the articles seized should have a direct bearing upon the question of reasonableness. So, also, should the knowledge the police may have of the criminal record and habits of the suspect, if relevant under the facts of a given case. Thus, a search in connection with an arrest of an ex-convict for a murder may properly exceed the allowable intensity of a search in connection with a traffic offense... ." See: State v. Chinn, 231 Or. 259, 267-268, 373 P.2d 392, 396 (1962).
The Supreme Court of the United States has pointed out that although the officers have authority to search the automobile as an incident to an arrest in order to discover weapons and evidence, that:
"... [T]hese justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest... . Here, we may assume, as the Government urges, that, either because the arrest were valid or because the police had probable cause to think the car stolen, the police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place... ." Preston v. United States, 376 U.S. 364, 367-368, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964).
The Court held to the same effect in James v. Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30, (1965).
This Court has based its opinion in the instant case upon Carroll v. United States, 276 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925), a 1925 case and also the more recent case of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), which is said to reaffirm the Carroll doctrine.
In the Chambers v. Maroney case, supra, the Court points out that even though the search was made at the police station after the arrest and was not incident to an arrest (citing Preston v. United States, supra); nevertheless, it was said:
"... Here the situation is different, for the police had probable cause *435 to believe that the robbers, carrying guns and the fruits of the crime, had fled the scene in a light blue compact station wagon which would be carrying four men, one wearing a green sweater and another wearing a trench coat. As the state courts correctly held, there was probable cause to arrest the occupants of the station wagon that the officers stopped; just as obviously was there probable cause to search the car for guns and stolen money." 399 U.S. at 47-48, 90 S.Ct. at 1979.
Even under the circumstances set out in Chambers v. Maroney, supra, the Court said:
"... But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in Carroll and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." 399 U.S. at 50-51, 90 S.Ct. at 1981.
The Court explained this holding in a footnote stating that a warrantless search could be made:
"... `where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.'" 399 U.S. at 50, Fn. 8, 90 S.Ct. at 1981.
In the case now before the Court the officers made a search of the automobile and found a marijuana cigarette in a plastic bag lying on the rear seat. The driver of the automobile was put in jail. Thereafter, one of the occupants of the automobile asked the officer if he found the marijuana in the ash tray. The officer then proceeded to make a second warrantless search of the automobile although he had time to obtain a search warrant before making the search.
This Court has pointed out that even where the officer has a search warrant and makes a search under the warrant, or had made a search incident to an arrest, he cannot return to make a second search of the property without obtaining a new search warrant. May v. State, 199 So.2d 635 (Miss. 1967); Martin v. State, 217 Miss. 506, 64 So.2d 629 (1953); Millette v. State, 167 Miss. 172, 148 So. 788 (1933).
Assuming, then, that the officer had the authority to make a warrantless search either because such search was incident to a lawful arrest or because he had probable cause to believe the automobile contained contraband, when the search was made and the driver incarcerated, the authority to search as an incident to the arrest no longer existed. Millette v. State, supra; King v. State, 230 So.2d 209 (Miss. 1970). When a new probable cause arose later, that led the officers to believe there was marijuana in the automobile, it became their duty to inform the magistrate so that he could determine whether or not new probable cause existed so as to again allow the officers to rummage through the effects of the defendant. King v. State, supra; Millette v. State, supra.
When one is a prisoner he is helpless. Many things can happen to his effects in his absence, and to permit persons to ransack, rifle, and plunder his automobile in order to establish a presumption of guilt against him at a time when he is in jail, is a dangerous procedure. He has no protection against such procedure except the Constitution and laws, and these are of no value unless they are enforced by the courts.
I am constrained, therefore, to voice my fears to the end that I must say: Thus far, but no further.